**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**ALEX ABADI**
360 Nueces Street, #2311
Austin, TX  78701

             Plaintiff,

             vs.

**CROWN INDUSTRIALS, LLC**
460 Veit Road, Unit F
Huntington Valley, PA 19006

**GE SUPPLY, INC.**
460 Veit Road, Unit F
Huntington Valley, PA 19006

**NORTHERN PRODUCTS
INCORPORATED**
7304 N. 12th Street
Melrose Park, PA  19027

             Defendants.

**CIVIL ACTION**

**No. 2:18-cv-_____**


**Jury Trial Demanded**

**COMPLAINT**

     Plaintiff, Alex Abadi, by and through his attorneys, Sirlin Lesser & Benson, P.C., hereby

sets forth the following causes of action:

**INTRODUCTION**

     1.     Between 2014 and 2017, the three Pennsylvania-based defendants acted in

concert to submit false invoices for payment to a Texas-based company for items that the

defendants never shipped and the company never received.  The company paid more than

$600,000 to the defendants based on the invoice scheme.  Following the discovery of this

scheme in mid-2017, plaintiff, the successor-in-interest to the company's claims related to the

1

invoice scheme, brings claims against the defendants under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961-1968 ("RICO") as well as claims for fraud, unjust enrichment, and civil conspiracy.

## THE PARTIES

2.      Plaintiff Alex Abadi is an individual who is a resident of the State of Texas, with an address of 360 Nueces Street, #2311, Austin, Texas  78791 ("Plaintiff" or "Abadi").

3.      Defendant Crown Industrials, LLC, which is sometimes referred to as Crown Industrial LLC or Crown Industrial Inc. ("Crown"), is a limited liability company organized under the laws of the Commonwealth of Pennsylvania; Crown's principal place of business is located at 460 Veit Road, Unit F, Huntington Valley, Pennsylvania, 19006.

4.      Defendant GE Supply, Inc. ("GE Supply") is a corporation incorporated under the laws of the Commonwealth of Pennsylvania; GE Supply's principal place of business is also located at 460 Veit Road, Unit F, Huntington Valley, Pennsylvania, 19006.

5.      Defendant Northern Products Incorporated ("Northern") is a corporation incorporated under the laws of the Commonwealth of Pennsylvania; Northern's principal place of business is located at 7304 N. 12th Street, Melrose Park, Pennsylvania, 19027.

6.      Crown, GE Supply, and Northern are collectively referred to as Defendants.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because this action involves a federal question.

8.      This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      No plaintiff is a citizen of the same state as any defendant:

(a)     Plaintiff is domiciled in Austin, Texas and is a citizen of Texas.

(b)     Crown is a limited liability company, and, upon information and belief, none of the members of Crown are citizens of Texas.

(c)     GE Supply is a corporation and is a citizen of Pennsylvania because it is incorporated in Pennsylvania and its principal place of business in located in Pennsylvania.

(d)     Northern is a corporation and is a citizen of Pennsylvania because it is incorporated in Pennsylvania and its principal place of business in located in Pennsylvania.

10.     This Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a), because, among other things, Defendants are subject to personal jurisdiction in this judicial district because they are all either reside, are found, have an agent or transact affairs within the Eastern District of Pennsylvania.  Moreover, Crown, GE Supply, and Northern are each organized under the laws of Pennsylvania and each of their principal places of business are located in the Eastern District of Pennsylvania such that Crown, GE Supply, and Northern each have continuous and substantial contact with Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Image Microsystems and Overview of the Defendants' Scheme

12.     Abadi was the majority shareholder, president and CEO of Image Microsystems, Inc. ("Image").  Image's business offices are located at 9800 Metric Boulevard, Suite 300,

Austin, Texas 78758 (the "Image Office").

13.     Image provides IT support and products to small and midsize businesses. Specifically, Image focuses on providing its customers with refurbished printers, laptops, servers, switches and desktop computers.

14.     Image sells and ships its products directly or through wholesalers and affiliates.

15.     During the relevant period, Image employed several hundred people in various locations in Texas.

16.     Specifically, in addition to the Image Office, Image operations occurred in a warehouse located at 3700 Kyle Crossing, Kyle Texas 78640 (the "Image Warehouse").

17.     Image ships products to its retail and wholesale customers from the Image Warehouse.

18.     Dan M. Adams ("Adams") was a trusted employee of Image, and, beginning in 2001, he worked as manager with oversight of Image's shipping and receiving department with responsibilities over both the Image Office and the Image Warehouse.

19.     Adams was also a purchasing agent for Image for over ten years before the events at issue herein occurred.

20.     In his capacity as purchasing agent, Adams was responsible for, among other things, placing orders relating to Image's shipping operation and approving the invoices for the items ordered by Image to be paid by Image's accounting department.

21.     In 2017, Abadi was preparing to sell his interests in Image to a group of investors.

22.     In connection with the sale, an audit of Image's books and records was performed in and around April and May 2017 by an external auditor.

23.     In the course of this audit, Image (and Abadi) discovered  for the first time in May

2017, that in the preceding two years, Image had paid Defendants approximately $600,000.00 for invoices for shipping products (such as packing tape and package wrap) and janitorial products (such as garbage bags and light bulbs) that Image had never actually ordered or received.

24.     Specifically, Image paid GE Supply $185,288.80 based on invoices for items not shipped by GE Supply or received by Image; Crown $311,240.86 based on invoices for items not shipped by Crown or received by Image; and Northern $105,834.46 based on invoices for items not shipped by Northern or received by Image.  An record of every payment Image made to Defendants is attached hereto as Exhibit A and incorporated herein.

25.     All of the invoices at issue were created by Defendants, directed to Adams' attention, and approved by Adams for payment by Image.  Because Image was also paying another supplier for janitorial and shipping products that it actually received, the fake invoices and the fact that no products were actually shipped by Defendants went unnoticed by Image and Plaintiff until the audit of the books and records.

26.     Following the initial discovery, Adams was questioned and he admitted that he had worked in concert with Defendants in a scheme in which Defendants issued fake invoices to Image for products that Image neither purchased nor received.  Upon information and believe, Adams received some type of kickback or compensation for his participation in this scheme to defraud Image and unjustly enrich the Defendants.

27.     While Plaintiff's investigation continues to recover move invoices to support the RICO and fraud claims, as detailed below, attached hereto are over 300 fake invoices that were mailed to Image's accounting department at the Image Office in Texas by Defendants from Pennsylvania and elsewhere and approved for payment from Image by Adams while the bogus "products" were supposedly shipped to Adams' attention at either the Image Office or the Image

Warehouse.  As discussed below, these 300 of the invoices are attached to the Complaint and form the basis of the RICO and fraud claims.  *See*  Exhibits C, E, and G (attaching copies of 309 invoices).

28.     Each invoice contains Adams' hand-written notation approval for payment by Image's accounting department—noting that they were "OK to pay DA."  *Id.*

29.     Upon Adams' approval of each invoice, Image's accounting department then issued checks drawn on Image's accounts as Comerica Bank or the Bank of San Antonio—both located in Texas—to pay the invoices by mailing the checks to Pennsylvania and North Carolina. *See* Exhibit A.

30.     Pursuant to the addresses on the invoices, the checks issued by Image were mailed to Defendants' post office boxes in Willow Grove, Pennsylvania, Huntingdon Valley, Pennsylvania, and a UPS Store address in Raleigh, North Carolina.

31.     The checks were all deposited in accounts at the same bank, which, upon information and belief, were all jointly controlled by Defendants.

32.     Abadi was able to complete the sale of his interest in Image to non-party Excess Net, LLC; however, as part of the sale, Image assigned to Abadi all of Image's rights to pursue claims against Defendants related to the fraudulent scheme they participated in with Adams. *See* June 17, 2017 Assignment of Claim, attached hereto as Exhibit B and incorporated herein. Accordingly, Abadi has standing to bring this action as the successor-in-interest to Image's claims against Defendants.

## Factual Allegations Common to All RICO Counts

33.     Plaintiff repeats and re-alleges the allegations contained in the above Paragraphs as if more fully set forth herein.

34.     As set forth in detail below, Crown, GE Supply, and Northern each conducted or participated in the conduct of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1862(c).

Culpable Persons

35.     Crown is a culpable person under 18 U.S.C. § 1961(c) because it is an entity capable of holding a beneficial interest in property.

36.     Crown is distinct from the Image Invoice Enterprise (defined below), and Crown conducts its own business and affairs such that Crown has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.  Crown is an active limited liability company registered with the Pennsylvania Department of State and maintains phone numbers, email addresses and employees.  Thus, it is a state-chartered legal entity with a distinct organizational structure and a continuing legal existence.

37.     GE Supply is a culpable person under 18 U.S.C. § 1961(c) because it is an entity capable of holding a beneficial interest in property.

38.     GE Supply is distinct from the Image Invoice Enterprise, and GE Supply conducts its own business and affairs such that GE Supply has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.  GE Supply is an active business corporation registered with the Pennsylvania Department of State and maintains phone numbers, email addresses, and employees.   Thus, it is a state-chartered legal entity with a required organizational structure and a continuing legal existence.

39.     Northern is a culpable person under 18 U.S.C. § 1961(c) because it is an entity capable of holding a beneficial interest in property.

40.     Northern is distinct from the Image Invoice Enterprise, and Crown conducts its

own business and affairs such that Northern has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.   Northern is an active business corporation registered with the Pennsylvania Department of State and maintains phone numbers, email addresses, and employees.   Thus, it is a state-chartered legal entity with a required organizational structure and a continuing legal existence.

<u>Racketeering Activity</u>

41.     Pursuant to 18 U.S.C. §1961(a), Defendants each engaged in the following predicate acts under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §2314 (transportation of money or property obtained by fraud) as a racketeering activity.

42.     In late-2014, an individual identifying himself as "Steve Wynn from Las Vegas" (although almost certainly not the casino and hotel developer) reached out to Adams.

43.     Wynn represented to Adams that he was a representative of Crown, and he proposed a scheme to Adams whereby Crown would generate and send fake invoices to Image for various janitorial and shipping-related products while never shipping any of the products listed on the invoices; Adams would approve the invoices for payment despite not receiving the products described on the invoices; and, upon Adams' approval, Image's accounting department would send a check to Crown in full payment of the invoices.

44.     Beginning in December 2014, Crown generated and submitted over 170 fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices from Pennsylvania to the Image Office and the payment of the fraudulent invoices to be mailed from the Image Office to Crown at the address it set forth in the invoices, P.O. Box 471, Willow Grove, Pennsylvania, 19090.

45.     In total, Image paid Crown $311,240.86 based on over 170 invoices sent to Image

by Crown for items that were never shipped to Image.  *See* Exhibit A.

46.     Although Plaintiff continues to collect the invoices sent by Crown, between December 2015 and May 2017, Crown submitted 137 separate invoices to Image which are attached to this Complaint as Exhibit C and incorporated herein (the "Crown Invoices").  The Crown Invoices are labeled CR0001 to CR0140 and summarized in the Crown Invoice Summary, which is attached hereto as Exhibit D and incorporated herein.

47.     Each of the attached Crown Invoice contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed Crown the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed Crown nothing for the items on the invoices.

48.     Crown made the false representations on the Crown Invoices with the intention that Image rely on the representations in processing payment to Crown for the amounts stated on the invoices.

49.     Image justifiably relied Crown's false representations to its detriment and paid $271,219.80 to Crown based on the false representations in the 140 Crown Invoices (CR0001 to CR0140) attached as Exhibit D.

50.     Crown committed the foregoing predicate acts set forth in paragraphs 40 to 48 willfully or with actual knowledge of that activities were illegal under 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. §1343 (wire fraud); and 18 U.S.C. § 2314 (transport of money taken by fraud).

51.     Specifically, with respect to the offenses under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. § 2314 (transport of money taken by fraud),

Image's, and by assignment, Plaintiff's damages of $271,219.80 were proximately caused by the false representations in the 140 Crown Invoices attached as Exhibit D and set forth in further detail in the Crown Invoice Summary.

52.     Similar to the Crown scheme, in July 2015, an individual representing GE Supply reached out to Adams.  The exact identity of the individual from GE Supply is unknown to Plaintiff at this time, however, Plaintiff believes and therefore avers that it was also Mr. Wynn.

53.     Similar to the Crown scheme, the individual proposed a scheme to Adams whereby GE Supply would also send fake invoices for various janitorial and shipping-related products to Image; Adams would approve the invoices for payment despite not receiving the products described on the invoices; and Image's accounting department would send a check to Crown.

54.     Beginning in July 2014, GE Supply generated and submitted over 160 fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices from Pennsylvania to the Image Office and the payment of the fraudulent invoices to be mailed from the Image Office to GE Supply at the address it set forth in the invoices, P.O. Box 888, Huntingdon Valley, Pennsylvania, 19006.

55.     In total, Image paid GE Supply $185,288.80 based on over 160 invoices sent to Image by GE Supply for items that were never shipped to Image.  *See* Exhibit A.

56.     Although Plaintiff continues to collect the invoices sent by GE Supply, between December 2015 and May 2017, GE Supply submitted 124 separate invoices to Image which are attached to this Complaint as Exhibit E and incorporated herein (the "GE Supply Invoices"). The GE Supply Invoices are labeled GE0001 to GE0124 and summarized in the GE Supply Invoice Summary, which is attached hereto as Exhibit F and incorporated herein.

57.     Each of the attached GE Supply Invoices contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed GE Supply the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed GE Supply nothing for the items on the invoices.

58.     GE Supply made the false representations on the GE Supply Invoices with the intention that Image rely on the representations in processing payment to GE Supply for the amounts stated on the invoices.

59.     Image justifiably relied GE Supply's false representations to its detriment and paid $156,965.20 to Crown based on the false representations in the 124 GE Supply Invoices (GE0001 to GE0124) attached as Exhibit E.

60.     GE Supply committed the foregoing predicate acts set forth in paragraphs 51 to 58 willfully or with actual knowledge of that activities were illegal under 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. §1343 (wire fraud); and 18 U.S.C. § 2314 (transport of money taken by fraud).

61.     Specifically, with respect to the offenses under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. § 2314 (transport of money taken by fraud), Image's, and by assignment, Plaintiff's damages of $156,965.20 were proximately caused by the false representations in the 124 GE Supply Invoices attached as Exhibit E and set forth in further detail in the GE Supply Invoice Summary.

62.     Similar to the GE Supply and Crown schemes, in 2015, an individual representing Northern reached out to Adams. The exact identity of the individual from GE Supply is unknown to Plaintiff at this time.

63.     The individual proposed a scheme to Adams whereby Northern would send fake invoices for various janitorial and shipping-related products to Image; Adams would approve the invoices for payment despite not receiving the products described on the invoices; and Image's accounting department would send a check to Northern.

64.     Beginning in December 2015, Northern generated and submitted over 50 fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices from Pennsylvania or North Carolina to the Image Office and the payment of the fraudulent invoices to be mailed from the Image Office to Northern at the address it set forth in the invoices, 7413 Six Forks Road, #364, Raleigh, North Carolina, 27615.

65.     In total, Image paid Northern $105,834.46 based on over 50 invoices sent to Image by Northern for items that were never shipped to Image.  *See*  Exhibit A.

66.     Although Plaintiff continues to collect the invoices sent by Northern, between December 2016 and May 2017, Northern submitted 45 separate invoices to Image which are attached to this Complaint as Exhibit G and incorporated herein (the "Northern Invoices").  The Northern Invoices are labeled NP0001 to NP0045 and summarized in the Northern Invoice Summary, which is attached hereto as Exhibit H and incorporated herein.

67.     Each of the attached Northern Invoices contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed Northern the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed Northern nothing for the items on the invoices.

12

68.     Northern made the false representations on the Northern Invoices with the intention that Image rely on the representations in processing payment to Northern for the amounts stated on the invoices.

69.     Image justifiably relied Northern's false representations to its detriment and paid $43,431.79 to Northern based on the false representations in the 45 Northern Invoices (NP0001 to NP0045) attached as Exhibit G.

70.     Northern committed the foregoing predicate acts set forth in paragraphs 61 to 68 willfully or with actual knowledge of that activities were illegal under 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. §1343 (wire fraud); and 18 U.S.C. § 2314 (transport of money taken by fraud).

71.     Specifically, with respect to the offenses under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. § 2314 (transport of money taken by fraud), Image's, and by assignment, Plaintiff's damages of $43,431.79 were proximately caused by the false representations in the 45 Northern Invoices attached as Exhibit G and set forth in further detail in the Northern Invoice Summary.

<u>Defendants' Pattern of Racketeering Activity</u>

72.     Defendants' predicate acts are related and continuous under 18 U.S.C. § 1961(5) such that they were involved in a pattern of racketeering.

73.     Defendants' predicate acts are related because they had the same purpose to induce Image to make payments on the invoices for items that were never shipped to Image.

74.     Defendants' predicate acts are related because the Defendants mailed Image over 309 separate invoices over a sixteen-month period between December 2015 and April 2017.  *See* Exhibit C (attaching the Crown Invoices); Exhibit E (attaching the GE Supply Invoices); and Exhibit G (attaching the Northern Invoices).

13

75.     The invoices sent to Image by the Defendants are interrelated by some distinguishing characteristics including the fact that the purchase order number (or P.O. No.) on every invoice from GE Supply, Crown, and Northern was generated in the exact same way:  each one includes the letters DA followed by the date of the invoice.  *Id.*  Upon information and belief "DA" stands for Dan Adams.

76.     The invoices sent to Image by the Defendants' are interrelated by some distinguishing characteristics including the fact that only four (4) of the 309 of the invoices ever charged for freight shipping.

77.     The invoices sent to Image by the Defendants' are interrelated by some distinguishing characteristics including the fact that the invoices were for identical products, such that if they were genuine, over the course of two weeks Image would have ordered over 500 lightbulbs from three separate suppliers and order the same amount a few weeks later.  And, according to the invoices, over a six-week period between December 2016 and January 2017, Image order and received from Crown, 2,304,000 feet of Machine Length Stretch Wrap, which is the equivalent of 437 miles or approximately the distance between Philadelphia and Detroit on a map.  *See*  Exhibit C (CR0098; CR0099; CR0103; CR0106; CR0112; and CR0114).

78.     The invoices sent to Image by the Defendants' are interrelated by some distinguishing characteristics including the fact that the invoices were for identical orders/products being shipped to the Image Office and the Image Warehouse on the same day. Plaintiff believes and therefore avers that this overlap and misdirection was employed to cover-up the fraudulent nature of the invoices and shipments.

79.     Additionally, the invoices sent by Defendants were all for relatively small amounts and the purported shipments and invoices were all directed to Dan Adams' attention so

that Adams could approve the bogus invoices for payment without detection from anyone else at Image.

80.     The Defendants are further linked by the fact that both Crown and GE Supply share the exact same principal place of business in Huntington Valley, Pennsylvania.  Indeed, other supply companies also list 460 Veit Road, Unit F, Huntington Valley, Pennsylvania, 19006 as their address, including United Industrial Supplies, Inc.

81.     Accordingly, Defendants' predicate acts are continuous because they consist of a series of related acts extending over a substantial period of time of at least seventeen months.

Racketeering Activity Affects an Enterprise Involved in Interstate Commerce

82.     Crown, GE Supply and Northern acted in concert with Adams, Mr. Wynn, and others currently unknown to Plaintiff to implement, conduct, and conceal the fraudulent scheme described in detail above such that it constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (the "Image Invoice Enterprise").

83.     Defendants were owners of, employed by or associated with the Image Invoice Enterprise, which is engaged in, or the activities of which, affect interstate commerce, and Defendants conduced or participated, directly or indirectly, in the conduct of the Image Invoice Enterprise's affairs through a pattern of racketeering activity set forth above within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c).

84.     The Image Invoice Enterprise directly engaged in the activities that substantially affect interstate commerce.

85.     As part of the Image Invoice Enterprise's affairs, Defendants (located in Pennsylvania) generated and submitted fraudulent invoices to Image (located in Texas) causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices to

Image and the payment of the fraudulent invoices from the Image (in Texas) to Defendants in Pennsylvania and North Carolina.

86.     Crown is distinct from the Image Invoice Enterprise, and Crown conducts its own business and affairs such that Crown has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.  Crown is an active limited liability company registered with the Pennsylvania Department of State and maintains phone numbers, email addresses and employees.  Thus, it is a state-chartered legal entity with a distinct organizational structure and a continuing legal existence.

87.     GE Supply is distinct from the Image Invoice Enterprise, and GE Supply conducts its own business and affairs such that GE Supply has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.  GE Supply is an active business corporation registered with the Pennsylvania Department of State and maintains phone numbers, email addresses, and employees.  Thus, it is a state-chartered legal entity with a required organizational structure and a continuing legal existence.

88.     Northern is distinct from the Image Invoice Enterprise, and Crown conducts its own business and affairs such that Northern has an existence separate and apart from the Image Invoice Enterprise selling products to other customers.  Northern is an active business corporation registered with the Pennsylvania Department of State and maintains phone numbers, email addresses, and employees.  Thus, it is a state-chartered legal entity with a required organizational structure and a continuing legal existence.

89.     Here, the Image Invoice Enterprise has no other purpose other than the commission of or facilitating the commission of the racketeering activity targeted at defrauding Image though the invoice scheme described in detail above.  Crown, GE Supply, and Northern

are employed by or associated with the Image Invoice Enterprise; however, the Image Invoice Enterprise is itself an entity separate and distinct from the Defendants.

<u>Plaintiff Meets the RICO Standing Requirements</u>

90.     Abadi is a "person" within the meaning of 18 U.S.C. § 1961(3) and 1964(c).

91.     Image's claims against Defendants have been properly assigned to Plaintiff, and Abadi is not pursuing any personal claims against Defendants.

92.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) and 1962.

93.     But for the Defendants' conduct set forth above constituting the violation of RICO, Image—and Plaintiff—would not have been injured.

94.     Moreover, as set forth above, Image detrimentally relied on the representations in the bogus invoices sent by Defendants as part of their fraudulent scheme.

**COUNT I**
**RICO 18 U.S.C. § 1962(c)**

95.     The allegations contained in the above Paragraphs are incorporated herein by reference.

96.     This Count is against defendants GE Supply, Crown, and Northern (the "Count I Defendants").

97.     The Image Invoice Enterprise is an enterprise engaged in and whose activities affect interstate commerce.  The Count I Defendants are employed by or associated with the enterprise.

98.     The Count I Defendant agreed to and did conduct and participate in the conduct of the Image Invoice Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.  Specifically: Count I Defendants generated and submitted fraudulent invoices to Image causing the US Mail and interstate wires to

be utilized in the submission of these fraudulent invoices to the Image Office and the payment of the fraudulent invoices from the Image Office to Count I Defendants in Pennsylvania and North Carolina.  Between December 2015 and April 2017, Count I Defendants submitted 309 separate invoices to Image as detailed above and in Exhibits C, E, and G.   Each invoice contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed Count I Defendants the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed Count I Defendants nothing for the items on the invoices.  Count I Defendants made the false representations on the invoices with the intention that Image rely on the representations in processing payment to Count I Defendants for the amount stated on the invoices.   Image justifiably relied on Count I Defendants' false representations to its detriment, and paid $471,616.79 to Count I Defendants based on the false representations in the invoices attached in Exhibits C, E, and G.

99.    Pursuant to and in furtherance of their fraudulent scheme, Count I Defendants committed multiple related acts by mailing Image 309 separate invoices over a seventeen-month period between December 2015 and May 2017, which falsely stated that products were shipped to Image and that Imaged owed Defendants for the products described on the invoices.

100.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

101.    The Count I Defendant have directly and indirectly conducted and participated in the conduct of the Image Invoice Enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

102.    Each Defendant's participation in the Image Invoice Enterprise was essential to the success of the enterprise's criminal aim and common purpose, namely defrauding Image, and in turn, Plaintiff, through securing payment through fraudulent invoices and kickback payments made to Adams. In violation of 18 U.S.C. § 1962, Defendants have engaged in, or knowingly participated in, the operation or management of the Enterprise through a continuing, related pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), by engaging in a series of two or more predicate acts of racketeering activity within ten years, including:

(i)    Mail fraud in violation of 18 U.S.C. § 1341 because Defendants intentionally devised a scheme to defraud Image of its property and profits.  Continually between December 2015 and May 2017, Defendants intentionally caused the U.S. Mail to be used for the purposes of executing, or attempting to execute the false invoice scheme.  The acts of mail fraud committed in furtherance of the invoice scheme include, but are not limited to, the fraudulent invoices mailed to Image and the checks that Image mailed based on those invoices.

(ii)    Wire fraud in violation of 18 U.S.C. § 1343 because Defendants intentionally devised the invoice scheme to defraud Image of its property and profits.   Continually between December 2015 and April 2017, Defendants intentionally caused interstate wires to be used for the purposes of executing, or attempting to execute the invoice scheme. Specifically, the acts of wire fraud committed by the Defendants include, but are not limited to, causing checks based on fraudulent invoices to be issued and deposited.

(iii)   Transportation in interstate commerce of money or property stolen or taken by fraud in violation of 18 U.S.C. § 2314 because Continually between December 2015 and April 2017, Defendants transported, transmitted and transferred, or caused to be transported, transmitted or transferred, in interstate commerce, Image's money or property, which Defendants stole, converted, or fraudulently obtained through the invoice scheme.  The money or property that was stolen, converted or fraudulently obtained through the invoice scheme has a value of $5,000 or more. Defendants knew that the money or property obtained through the invoice scheme was stolen, converted, or fraudulently obtained.

103.    As a direct and proximate and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Image and Plaintiff has been injured in its business and property in that Image paid and GE Supply received $156,965.20 in payment based on the fraudulent invoices; Image paid and Crown received $271,219.80 in payment based on the fraudulent invoices; and Image paid and Northern received $43,431.79 in payment based on the fraudulent invoices.

104.    Thus, as a direct and proximate and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Image and Plaintiff has been injured in its business and property because $471,616.79 was paid to Defendants based on their fraudulent invoices.

WHEREFORE, Plaintiff demands judgment in his favor and against Crown Industrials, LLC, GE Supply, Inc. and Northern Products Incorporated for $471,616.79, trebled in accordance with 18 U.S.C. § 1964(c) to total $1,414,850.37 in addition to the costs of this suit

and reasonable attorney's fees in accordance with 18 U.S.C. § 1964(c), and such other relief that the Court may deem just and proper.

**COUNT II**
**RICO 18 U.S.C. § 1962(d)**

105.    The allegations contained in the above Paragraphs are incorporated herein by reference.

106.    As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(d).  Specifically, the Count II Defendants conspired to conduct and participate in the conduct of the affairs of the Image Invoice Enterprise though a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

107.    The Count II Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interest in the enterprise through a pattern of racketeering activity.  The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those act to further the invoice schemes described above.  Such conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

108.    As direct and proximate result of the Count II  Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violation of 18 U.S.C. § 1962(d), Image and Plaintiff has been injured in its business and property because $ was paid to Defendants based on their fraudulent invoices.

WHEREFORE, Plaintiff demands judgment in his favor and against Crown Industrials, LLC, GE Supply, Inc. and Northern Products Incorporated for $471,616.79, trebled in accordance with 18 U.S.C. § 1964(c) to total $1,414,850.37, in addition to the costs of this suit

and reasonable attorney's fees in accordance with 18 U.S.C. § 1964(c), and such other relief that the Court may deem just and proper.

## COUNT III
## FRAUD

109.    The allegations contained in the above Paragraphs are incorporated herein by reference.

110.    This Count is against defendant GE Supply.

111.    Between December 2015 and May 2017, GE Supply generated and submitted fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices to the Image Office and the payment of the fraudulent invoices from the Image Office to GE Supply at the address it set forth in the invoices, P.O. Box 888, Huntingdon Valley, Pennsylvania 19006.

112.    As set forth in detail in the GE Supply Invoice Summary, between December 2015 and May 2017, GE Supply submitted 124 separate invoices to Image.  True and correct copies of the GE Supply Invoices are attached as Exhibit E.

113.    Each of the GE Supply Invoices (GE0001 through GE0124) contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed GE Supply the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed GE Supply nothing for the items on the invoices.

114.    GE Supply made the false representations on the invoices with the intention that Image rely on the representations in processing payment to GE Supply for the amount stated on the invoices.

115.    Image justifiably relied GE Supply's false representations to its detriment and paid $156,965.20 to GE Supply based on the false representations in the GE Supply Invoices.

116.    Image and Plaintiff first discovered GE Supply's fraudulent activity in May 2017 because the scheme was covered up by Adams' and GE Supply's fraud.

117.    Plaintiff has standing to bring this fraud claim against GE Supply because it is related to Adams' activity.

118.    GE Supply's wrongful conduct is actionable, and Plaintiff's rights are clear.

119.    GE Supply's acts and omissions were deceptive, willful, intentional, reckless, recklessly indifferent to the rights of others, and outrageous.

WHEREFORE, Plaintiff demands judgment in its favor and against GE Supply, Inc. for $156,965.20 in addition to punitive damages and such other relief as the Court may deem just and proper.

## COUNT IV
## FRAUD

120.    The allegations contained in the above Paragraphs are incorporated herein by reference.

121.    This Count is against defendant Crown.

122.    Between December 2015 through May 2017, Crown generated and submitted fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices to the Image Office and the payment of the fraudulent invoices from the Image Office to Crown at the address it set forth in the invoices, P.O. Box 471, Willow Grove, Pennsylvania, 19090.

123.    As set forth in detail in the Crown Invoice Summary, between December 2015 and May 2017, Crown submitted 140 separate invoices to Image.  True and correct copies of the

Crown Invoices are attached as Exhibit C.

124.    Each of the Crown Invoices (CR0001 through CR0140) contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image and (ii) that Image owed Crown the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed Crown nothing for the items on the invoices.

125.    Crown made the false representations on the invoices with the intention that Image rely on the representations in processing payment to Crown for the amount stated on the invoices.

126.    Image justifiably relied on Crown's false representations to its detriment and paid $271,219.80 to Crown based on the false representations in the Crown Invoices.

127.    Image and Plaintiff first discovered Crown's fraudulent activity in May 2017 because the scheme was covered up by Adams' and Crown's fraud.

128.    Plaintiff has standing to bring this fraud claim against Crown because it is related to Adams' activity.

129.    Crown's wrongful conduct is actionable, and Plaintiff's rights are clear.

130.    Crown's acts and omissions were deceptive, willful, intentional, reckless, recklessly indifferent to the rights of others, and outrageous.

WHEREFORE, Plaintiff demands judgment in its favor and against Crown Industrials, LLC for $271,219.80 in addition to punitive damages and such other relief as the Court may deem just and proper.

**COUNT V**
**FRAUD**

131.    The allegations contained in the above Paragraphs are incorporated herein by reference.

132.    This Count is against defendant Northern.

133.    Between December 2016 through May 2017, Northern generated and submitted fraudulent invoices to Image causing the US Mail and interstate wires to be utilized in the submission of these fraudulent invoices to the Image Office and the payment of the fraudulent invoices from the Image Office to Crown at the address it set forth in the invoices, 7413 Six Forks Road, #364, Raleigh, North Carolina, 27615.

134.    As set forth in detail in the Northern Invoice Summary, between December 2016 and May 2017, Northern submitted 45 separate invoices to Image.  True and correct copies of the Northern Invoices are attached as Exhibit G.

135.    Each of the Northern Invoices (NP0001 through NP0045) contained material false representations (i) that janitorial or packing supplies described on the invoice were shipped to Image by Northern and (ii) that Image owed Northern the amount set fort on the invoice for the items described on the invoice with the fully knowledge that such representations were false because the items described on the invoices were never shipped to Image and Image owed Northern nothing for the items on the invoices.

136.    Northern made the false representations on the invoices with the intention that Image rely on the representations in processing payment to Northern for the amount stated on the invoices.

137.    Image justifiably relied on Northern's false representations to its detriment and paid $43,431.79 to Northern based on the false representations in the Northern Invoices.

138.    Image and Plaintiff first discovered Northern's fraudulent activity in May 2017 because the scheme was covered up by Adams' and Northern's fraud.

139.    Plaintiff has standing to bring this fraud claim against Northern because it is related to Adams' activity.

140.    Northern's wrongful conduct is actionable, and Plaintiff's rights are clear.

141.    Northern's acts and omissions were deceptive, willful, intentional, reckless, recklessly indifferent to the rights of others, and outrageous.

WHEREFORE, Plaintiff demands judgment in its favor and against Northern Products Incorporated for $43,431.79 in addition to punitive damages and such other relief as the Court may deem just and proper.

## COUNT VI
## Civil Conspiracy

142.    The allegations contained in the above Paragraphs are incorporated herein by reference.

143.    This Count is against defendant Crown, GE Supply, and Northern.

144.    As set forth in detail above, Crown, GE Supply, and Northern are distinct entities that combined or agreed with each other and Adams with the intent to defraud Image by generating and submitted fraudulent invoices to Image for products that were not shipped by Defendants or received by Image.

145.    In furtherance of the conspiracy, Crown, GE Supply, and Northern committed overt acts of generating and submitted fraudulent invoices to Image for payment that resulted in actual legal damage to Image totaling $471,616.79 based on the Crown Invoices, the GE Supply Invoices, and the Northern Invoices that are attached hereto as Exhibits C, E, and G.

146.    Defendants acted with malice when they generated and submitted fraudulent

26

invoices to Image because they have concocted a scheme whereby the Defendants would send fake invoices for various janitorial and shipping-related products to Image; Adams would approve the invoices for payment despite not receiving the products described on the invoices; and Image's accounting department would send a check to Defendants.

147.    Defendants planned for and accepted the illicit benefits of there scheme with malice.

148.    Image and Plaintiff first discovered Defendant's fraudulent activity in May 2017 because the scheme was covered up by Adams' and Defendant's fraud.

149.    Plaintiff has standing to bring this fraud claim against Defendant because it is related to Adams' activity.

150.    Defendants' wrongful conduct is actionable, and Plaintiff's rights are clear.

151.    Defendants' acts and omissions were deceptive, willful, intentional, reckless, recklessly indifferent to the rights of others, and outrageous.

WHEREFORE, Plaintiff demands judgment in its favor and against Crown Industrials, LLC, GE Supply, Inc. and Northern Products Incorporated for $471,616.79 in addition to punitive damages and such other relief as the Court may deem just and proper.

## COUNT VII
## UNJUST ENRICHMENT

152.    The allegations contained in the above Paragraphs are incorporated herein by reference.

153.    This Count is against defendant Crown.

154.    Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.

155.    Between November 2014 and May 2017, Image paid Crown $311,240.86 for

items and products that Image never received.  *See*  Exhibit A.

156.    Crown cashed every check that Image sent to cover the invoices for items and products that it never shipped to Image; thus, Crown appreciated the $311,240.86 sent by Image.

157.    Crown has accepted and retained the $311,240.86 sent by Image despite never shipping the items and products listed on the invoices.

158.    Under these circumstances it is inequitable for Crown to retain this benefit without payment of value back to Plaintiff.

159.    Here, Crown wrongfully secured—or at minimum passively received—a benefit that it would be unconscionable for Crown to retain.

160.    Image and Plaintiff first discovered Crowns fraudulent activity in May 2017 because the scheme was covered up by Adams' and Crown's fraud.

161.    Plaintiff has standing to bring this fraud claim against Crown because it is related to Adams' activity.

162.    Crown's wrongful conduct is actionable in equity, and Plaintiffs' rights are clear.

WHEREFORE, Plaintiff demands judgment in its favor and against Crown Industrials, LLC, for $311,240.86 and such other relief as the Court may deem just and proper.

## COUNT VIII
## UNJUST ENRICHMENT

163.    The allegations contained in the above Paragraphs are incorporated herein by reference.

164.    This Count is against defendant GE Supply.

165.    Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.

166.    Between July 2015 and May 2017, Image paid GE Supply $185,288.80 for items

and products that Image never received.  *See*  Exhibit A.

167.   GE Supply cashed every check that Image sent to cover the invoices for items and products that it never shipped to Image; thus, GE Supply appreciated the $185,288.80 sent by Image.

168.   GE Supply has accepted and retained the $185,288.80 sent by Image despite never shipping the items and products listed on the invoices.

169.   Under these circumstances it is inequitable for GE Supply to retain this benefit without payment of value back to Plaintiff.

170.   Here, GE Supply wrongfully secured—or at minimum passively received—a benefit that it would be unconscionable for GE Supply to retain.

171.   Image and Plaintiff first discovered GE Supply's fraudulent activity in May 2017 because the scheme was covered up by Adams' and GE Supply's fraud.

172.   Plaintiff has standing to bring this fraud claim against GE Supply because it is related to Adams' activity.

173.   GE Supply's wrongful conduct is actionable in equity, and Plaintiff's rights are clear.

WHEREFORE, Plaintiff demands judgment in its favor and against GE Supply, Inc. for $185,288.80 and such other relief as the Court may deem just and proper.

**COUNT IX**
**UNJUST ENRICHMENT**

174.   The allegations contained in the above Paragraphs are incorporated herein by reference.

175.   This Count is against defendant Northern.

176.   Where unjust enrichment is found, the law implies a contract, which requires the

defendant to pay to the plaintiff the value of the benefit conferred.

177.     Between December 2015 and May 2017, Image paid Northern $105,834.46 for items and products that Image never received.  *See* Exhibit A.

178.     Northern cashed every check that Image sent to cover the invoices for items and products that it never shipped to Image; thus, Northern appreciated the $105,834.46 sent by Image.

179.     Northern has accepted and retained the $105,834.46 sent by Image despite never shipping the items and products listed on the invoices.

180.     Under these circumstances it is inequitable for Northern to retain this benefit without payment of value back to Plaintiff.

181.     Here, Northern wrongfully secured—or at minimum passively received—a benefit that it would be unconscionable for Northern to retain.

182.     Image and Plaintiff first discovered Northern's fraudulent activity in May 2017 because the scheme was covered up by Adams' and Northern's fraud.

183.     Plaintiff has standing to bring this fraud claim against Northern because it is related to Adams' activity.

184.     Northern's wrongful conduct is actionable in equity, and Plaintiff's rights are clear.

WHEREFORE, Plaintiff demands judgment in its favor and against Northern Products Incorporated for $105,834.46 and such other relief as the Court may deem just and proper.

Respectfully submitted,

SIRLIN LESSER & BENSON, P.C.

/s/  Patrick J. Troy
Patrick J. Troy (PA Id. 89890)
123 South Broad Street, Suite 2100
Philadelphia, PA 19109
*Attorneys for Plaintiff*

Dated:  August 16, 2018